# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-00810-COA

**MONICA A. TEEL**                                                                                    **APPELLANT**

**v.**

**BOYD BILOXI, LLC D/B/A IP CASINO RESORT**                                   **APPELLEE**
**& SPA**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/10/2024 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MONICA A. TEEL (PRO SE) |
| ATTORNEY FOR APPELLEE: | PATRICK R. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 08/19/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND LASSITTER ST. PÉ, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Monica Teel filed a pro se complaint against "IP Casino Resort Spa" (IP Resort) in the Harrison County Circuit Court alleging a single public-accommodation racial discrimination claim under 42 U.S.C. § 2000a (2018) (Title II). Teel, a Black woman, alleged in her complaint that an IP Resort bartender called her a racial epithet after she questioned the cost of a cocktail. She alleged that this incident created a "terrifying and hostile environment." Teel sought $4 million in punitive and compensatory damages as her sole request for relief.

¶2.     Boyd Biloxi LLC doing business as IP Casino Resort & Spa (Boyd Biloxi), filed a

motion to dismiss Teel's complaint pursuant to Mississippi Rule of Civil Procedure 12(b)(6), asserting that Teel failed to allege any set of facts entitling her to relief pursuant to Title II. The circuit court granted Boyd Biloxi's motion and dismissed Teel's complaint on two grounds, namely that (1) Teel failed to allege facts supporting a disparate impact claim under Title II; and (2) Teel sought only monetary damages, which are not recoverable under Title II.

¶3. Teel appeals, asserting the circuit court erred in dismissing her complaint. As an initial point, "Title II authorizes only prospective injunctive and declaratory relief." *Hager v. Brinker Texas Inc*., 102 F.4th 692, 705 (5th Cir. 2024) (citing 42 U.S.C. § 2000a-3; *Newman v. Piggie Park Enters. Inc*., 390 U.S. 400, 402 (1968)). Teel's sole claim for relief was for monetary damages. She alleged no facts in her complaint supporting a claim for injunctive relief. The circuit court did not err in granting Boyd Biloxi's Rule 12(b)(6) motion to dismiss on this ground in this regard. However, as addressed below, we find that Teel asserted a prima facie case of racial discrimination under Title II. We therefore find that the circuit court erred in failing to consider the viability of this claim and dismissing Teel's pro se complaint on the basis that she did not allege a disparate impact claim under Title II.

¶4. Further, the circuit court's order did not specify that the dismissal of Teel's complaint was without prejudice. As such, we find that we must reverse the circuit court's order of dismissal with instructions to dismiss Teel's complaint without prejudice to allow Teel to amend her complaint if Teel properly requests leave to amend in accordance with Mississippi Rule of Civil Procedure 15(a).

¶5.    Teel also asserts on appeal that she did not receive "due process" in the circuit court. Teel bases her lack-of-due-process assertion on allegations of bias, conspiracy, and record-tampering concerning the circuit court judge, the circuit court clerk, and Boyd Biloxi's counsel. The record reflects, however, that Teel never raised these allegations in the circuit court; thus, she is procedurally barred from raising her lack-of-due-process issue on appeal. Further, upon our review, we find that Teel's accusations against the circuit court judge, the circuit court clerk, and Boyd Biloxi's counsel are baseless. We therefore find that Teel's lack-of-due-process assignment of error is entirely without merit.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

¶6.    On December 27, 2023, Teel filed her pro se complaint against Boyd Biloxi alleging that "[a] violation of the Civil Rights Act of 1964—Prohibition of Discrimination Based on Race, Color, Religion, Sex and National Origin was committed by IP [Resort]." When Teel responded to Boyd Biloxi's motion to dismiss her complaint, Teel clarified that her complaint "[i]nvolves a claim of Title II Civil Rights Act Of 1964, 42 U.S.C. 2000a Public Accommodation Act Violation."

¶7.    Teel alleged in her complaint that on an unspecified date, "[a]n employee (bartender) of IP Casino Resort Spa created a racially motivated and hostile environment." Teel alleged she ordered some food at the IP Resort. As she was waiting for her food, the bartender "loudly and rudely called [her] a 'black n***** b****' because [she] questioned the price of the cocktail being served." Teel alleged that this "insulting and repulsive response" to her question "created a terrifying and hostile environment," causing her to become "distraught

3

as it seemed she was in extreme danger." As she continued to wait for her food "[a]fter the verbal harassment attack," Teel alleged that "[f]our (or more maybe) members of IP [Resort] management approached [her] to ask if she was okay." Teel told them that "she couldn't talk at that moment as she was so distressed." Once her order was ready, Teel left the IP Resort and her "granddaughter had to drive [her] home that evening."

¶8.     Teel alleged that "[t]his trauma has caused [her] severe emotional distress, extreme mental anguish, depression[,] and a sense of helplessness." In her prayer for relief, Teel "request[ed] the court to award damages of $4,000,000.00, Punitive and Compensatory damages as well as any other damages determined by the Court."

¶9.     Boyd Biloxi filed a Rule 12(b)(6) motion to dismiss two weeks later on January 11, 2024, asserting that Teel's complaint should be dismissed for two reasons: First, Teel did not "establish a prima facie case of discrimination required in disparate impact cases[,]"[1] citing *Arguello v. Conoco Inc.*, 207 F.3d 803, 813 (5th Cir. 2000). Second, Boyd Biloxi asserted that dismissal was proper because Teel sought only monetary damages in her complaint, but "the only relief that can be awarded in a Title II claim is injunctive relief[,]" citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 244 (5th Cir. 1999). The motion was set for a hearing on April 12, 2024. According to Boyd Biloxi, this was "the first date upon which [Teel] agreed to a hearing."

¶10.    In response to Boyd Biloxi's motion to dismiss, Teel filed an "Objection to Motion

---

[1] "In disparate impact claims[,] the plaintiff must first establish that there is [a] neutral policy or practice that has had a discriminatory impact on a particular group." *Arguello*, 207 F.3d at 813 n.12.

to Dismiss & Amendment to Claim," seeking to add a claim to her complaint for "vicarious liability" against Boyd Biloxi for the bartender's actions and asserting that Boyd Biloxi's motion should be denied because she seeks to recover damages for the bartender's "[choice] to respond" to her question regarding the price of the cocktail "with racial slurs and derogatory language" that resulted in "no service and instead humiliation, fear, mental anguish and Fear of one's safety." In its rebuttal to Teel's response, Boyd Biloxi essentially reiterated the same arguments it made for the dismissal of her complaint in its original motion to dismiss.

¶11. Teel subsequently served a subpoena requesting written discovery from Boyd Biloxi. Teel sought employment information about certain employees working on January 4, 2023; surveillance coverage of that evening; and any incident reports filed on that date.[2] In response, Boyd Biloxi filed a motion to stay the proceedings until the legal issues relating to the pending motion to dismiss were resolved. The motion to stay was also set to be heard on April 12, 2024. Teel filed a response objecting to the motion to stay, asserting that she needed the requested "[e]vidence to prove all allegations" in her complaint.

¶12. After the motion to stay was filed, Teel also filed a "Motion to Amend Number of Defendants," seeking to add "Boyd Gaming Corporation" as a defendant. Teel did not set this motion for a hearing.

¶13. At the April 12, 2024 hearing, Teel told the circuit court judge that she may have COVID-19 or the flu. Teel also told the judge that she wanted to retain an attorney to

_____

[2] Although the date of the incident was not specified in Teel's complaint, the incident apparently occurred on January 4, 2023.

5

represent her. Noting that the motion to dismiss had been pending since mid-January and that Teel had not yet retained a lawyer, the circuit court continued the hearing to April 19, 2024, to allow Teel to retain counsel. The circuit court also issued an interim order staying all matters relating to the motion to dismiss until the new hearing date. The circuit court judge announced "that everything stays right like it is today. Nobody's got to answer anything, nobody's got to respond to anything other than [Teel must] . . . get her lawyer and get her lawyer up to speed."

¶14. On April 19, the circuit court heard Boyd Biloxi's motion to dismiss. Teel told the circuit court judge she did not have COVID-19 or the flu. She also stated that she was going to represent herself. The judge explained to Teel that in representing herself, she must follow the same rules as attorneys and that the circuit court could not help her. Teel told the circuit court that she understood. The judge also explained to Teel that she had read everything that Teel filed in the case except for the papers that Teel filed after the April 12 hearing.[3] The judge reminded Teel that at the April 12 hearing, "I gave you the opportunity to have some additional time to hire an attorney, and I told you nothing was going to change between then and now, that you weren't going to be able to supplement." The judge further explained, "So whatever you filed since you were here last Friday morning is not properly before the court.

---

[3] Contrary to the circuit court's April 12 instructions, on April 16, 2024, Teel filed "Plaintiff's Am[]endment to Complaint on April 16, 2024" and Plaintiff's Me[mo]randum of Case Law"; on April 18, 2024, Teel filed "Plaintiff's Amendment to Memorandum of Law."

You didn't . . . send it to me. I haven't seen it, and I haven't read it."[4]

¶15.    Counsel for Boyd Biloxi began the hearing by explaining that Boyd Biloxi owns and controls IP Casino Resort, which is "just the [d/b/a name] that Boyd Biloxi does business as." He further explained that to avoid having to seek dismissal because the wrong entity had been sued in the complaint, he simply "made an appearance on behalf of Boyd Biloxi[] LLC and said [in the notice], 'improperly sued as IP,' so that we could bring this matter to a head." Following this explanation, defense counsel addressed the substance of the motion to dismiss, summarizing the same arguments delineated in that motion and Boyd Biloxi's rebuttal.

¶16.    During her argument, Teel focused on her need for surveillance video footage from the evening of the incident "to show the bartender's attitude toward [her]" and to show that the people in management who "approached [her] and ask[ed] if I was okay, did I need help after the incident happened . . . [were] [a]ll white. There was no black employees on that floor, period, that I could even go up and consult out." The judge repeatedly explained to Teel that the facts of the case were not at issue in this hearing. The judge explained that instead, Teel was there to address Boyd Biloxi's legal arguments about dismissal. The judge summarized Boyd Biloxi's two arguments to ensure Teel understood what Boyd Biloxi was asserting. Teel remained focused on the underlying facts of the case.

¶17.    After both sides presented their arguments, the judge granted Boyd Biloxi's motion

_____

[4] The judge reminded Teel about this April 12 ruling several times during the hearing, explaining that Teel's late-filed papers would not be considered because they were filed contrary to the court's directive and, as a result, were too late to be reviewed by the court.

to dismiss, explaining her ruling from the bench and then embodying the ruling in the "Order and Judgment" entered on June 10, 2024.

¶18. The circuit court dismissed Teel's complaint on two grounds. First, the circuit court found that Teel's complaint failed to state a claim because Teel "allege[d] only a single incident [of discrimination]." The circuit court recognized that "if that incident occurred as alleged, it was something the bartender should not have said[,]" but the court nevertheless found that dismissal was proper because these allegations did not comprise a disparate impact claim under Title II. Specifically, the circuit court found, "Teel does not allege any other incidents of any kind at IP [Resort] or any pattern of incidents. She does not allege any practice or policy of Boyd [Biloxi] which is or might be discriminatory or have any disparate impact on any group, class, race." Because Teel's complaint lacked these allegations, the circuit court dismissed Teel's complaint pursuant to Rule 12(b)(6), citing *Arguello*, 207 F.3d at 813. As a second ground for dismissal, the circuit court ruled that Teel's complaint also "must be dismissed because claims for monetary damages are not allowed by law under Title II."

¶19. Teel appealed.

## STANDARD OF REVIEW

¶20. "The standard of review for a trial court's grant or denial of a motion to dismiss is de novo." *Greenwood Leflore Hosp. v. Boykin*, 400 So. 3d 445, 448 (¶9) (Miss. 2025). In this regard, "[r]eview is limited to the face of the pleading, and allegations must be accepted as true. The motion should not be granted unless it appears beyond a reasonable doubt that the

plaintiff will be unable to prove any set of facts in support of the claim." *Id.* A party's standing to bring an action is also reviewed de novo, *Davis v. City of Jackson*, 240 So. 3d 381, 383 (¶9) (Miss. 2018), as well as questions of statutory interpretation. *K&C Logistics LLC v. Old Dominion Freight Line Inc.*, 374 So. 3d 515, 519 (¶10) (Miss. 2023).

## DISCUSSION

### I. Public-Accommodation Racial Discrimination Pursuant to 42 U.S.C. § 2000a

¶21. Teel alleges in her complaint that "[a]n employee (bartender) of [IP Resort] created a racially motivated and hostile environment." Specifically, Teel alleged that she ordered food at the IP Resort, and as she was waiting for her food, the IP Resort bartender called her a "'black n***** b****'" because [she] questioned the price of the cocktail being served." She eventually received her food and left the restaurant distraught. Accepting Teel's allegations as true, we find that Teel alleged a straightforward prima facie case of public-accommodation racial discrimination under Title II in her complaint. Accordingly, we find that the circuit court erred in dismissing Teel's complaint based upon her failure to allege facts supporting a disparate impact claim under Title II, without considering the viability of Teel's claim as alleged.[5]

---

[5] In his separate opinion, Judge Lawrence agrees that Boyd Biloxi's "bartender made a horrible, unprofessional, and totally unacceptable comment to Teel" but then goes on to assert that "[o]ne person acting in such a reprehensible manner can hardly be sufficient to prove racial discrimination by a business based on the required legal elements" constituting a prima facie case of discrimination under Title II. Sep. Op. at ¶55. We disagree for the reasons we address in detail *infra*. We also point out that Teel alleged that the bartender was an IP Resort employee and that his alleged discriminatory conduct occurred while he was on duty and was responding to her question about the price of a cocktail. No issues as to agency or vicarious liability as grounds for the Rule 12(b)(6) dismissal were raised below

9

¶22. As its title provides, 42 U.S.C. § 2000a sets forth a "[p]rohibition against discrimination . . . in places of public accommodation." 42 U.S.C. § 2000a. The statute establishes that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." *Id.*

¶23. To prove a prima facie case of discrimination under Title II, a plaintiff must show "(1) she is a member of a protected class; (2) she attempted to contract for the services of a public accommodation; (3) she was denied those services; and (4) the services were made available to similarly situated persons outside her protected class." *Hager*, 102 F.4th at 700 (quoting *Fahim v. Marriott Hotel Servs. Inc.*, 551 F.3d 344, 350 (5th Cir. 2008)).

¶24. In *Hager*, Sharnez Hager, a Black restaurant patron, asserted a single public-accommodation claim under Title II, among other claims. *Id.* at 696. According to Hager, she and her group were denied immediate seating at an unoccupied large table at the restaurant; twenty minutes later, a white man was seated at the same table. *Id.* at 701. The white man who arrived later was Hager's fiancé. *Id.* at 696.[6] Once Hager and her group were eventually seated with Hager's fiancé, the group waited for thirty minutes without service with the waitstaff "remaining huddled and pointing at [the family]." *Id.* at 701. The

or in this appeal.

[6] When Hager asked the restaurant hostess why her fiancé had been seated before her and her group, the hostess told Hager that he was the one with the reservation. *Id.* Evidence presented at the summary judgment hearing showed that Hager's fiancé did not have a reservation. *Id.*

10

restaurant moved for summary judgment, asserting that Hager could not "even make out her prima facie case because she was eventually seated at a table [at the restaurant]." *Id.* at 699. The United States Court of Appeals for the Fifth Circuit rejected that argument and held that accepting Hager's version of the facts as true, as it must, Hager had established a prima facie violation of Title II. *Id.* at 701.

¶25.   In reaching this conclusion, the Fifth Circuit recognized that "Title II . . . is . . . far-reaching, containing a 'sweeping prohibition of discrimination' in public accommodations." *Id.* (quoting *Daniel v. Paul*, 395 U.S. 298, 301 (1969)). "The law guarantees 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation' . . . . *It is clear from the text of the statute itself that Title II concerns more than just the outright denial of services*." *Id.* (emphasis added) (quoting 42 U.S.C. § 2000a(a)) (citations omitted). "[Title II] prohibits discrimination in the "privileges, advantages, and accommodations" offered as well. Moreover, Title II does not simply prohibit discrimination in the provision of service, *it guarantees "equal enjoyment" of that service*." *Id.* (emphasis added). Addressing the circumstances before it, the court held that "[a] restaurant cannot preference seating white customers over Black customers and be said to offer 'equal enjoyment' of its services to its Black patrons, simply because they were, before the end of the day, offered a table." *Id.*

¶26.   We find that the Fifth Circuit's analysis in *Hager* is equally applicable here. Like the circumstances in *Hager*, finding that Teel received the cocktail and eventually received her food at the IP Resort is of no moment. Rather, accepting Teel's allegations as true, as we

11

must, we find that under no interpretation could the IP Resort be said to have offered Teel "equal enjoyment" of its services when its employee (bartender) responded to Teel's price inquiry by calling her "[t]he most noxious racial epithet in the contemporary American lexicon." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015) (discussing the term "n*****").  We cannot overstate the demeaning and offensive nature of the insult Teel alleged she endured here in the service context.  "Far from 'a mere offensive utterance,' this slur is inherently and deeply 'humiliating.'" *Johnson v. PRIDE Indus. Inc*., 7 F.4th 392, 401 (5th Cir. 2021) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993)).

¶27.    In short, we find, without question, that Teel stated a claim for public-accommodation racial discrimination under Title II in this case.  *See Hager*, 102 F.4th at 701; *see also Eddy v. Waffle House Inc*., 482 F.3d 674, 676 n.1 (4th Cir. 2007) (concluding that if the restaurant employee uttered the phrase "we don't serve n*****s here" to a patron "that is prima facie evidence of intent to discriminate on the basis of race"), *judgment vacated on other grounds*, 554 U.S. 911 (2008); *Jones v. City of Boston*, 738 F. Supp. 604, 605 (D. Mass. 1990) ("Without question, the racial epithet of "n*****" shows an intent to discriminate on the basis of race.  That satisfies plaintiff's burden under . . . 42 U.S.C. § 2000a . . . of showing that [plaintiff] was denied equal access to a place of public accommodation on the basis of race.").

¶28.    As noted, the circuit court found that dismissal pursuant to Rule 12(b)(6) was appropriate because Teel did not allege facts supporting a *disparate impact claim* under Title II, relying on *Arguello*, 207 F.3d at 813, to support this determination.  In *Arguello*, the

plaintiffs alleged that Conoco was in violation of 42 U.S.C. § 1981, Title II, and state law "for refusing to serve Hispanic and African-American customers, and subjecting this class of customers[7] to substandard service and racially derogatory remarks." *Arguello*, 207 F.3d at 806. "The plaintiffs also claimed that Conoco had illegal policies and practices which disparately impacted Hispanics and African-Americans." *Id.* The district court dismissed the plaintiffs' disparate-impact and state law claims and later granted summary judgment on the plaintiffs' remaining claims. *Id.*

¶29.    The Fifth Circuit affirmed the district court's dismissal of the plaintiffs' disparate-impact claims, *id.* at 813,[8] but *reversed* the district court's summary judgment in Conoco's favor relating to the Section 1981 and Title II claims brought by Arguello and Govea concerning a clerk (Cindy Smith) in a Conoco-owned station who "admitted to a Conoco district manager that she did subject Arguello and Govea to the use of racial epithets,

---

[7] In an amended complaint, the plaintiffs "dropped all claims made on behalf of the class." *Id.* at 806 n.3.

[8] In so ruling, the Fifth Circuit first noted that "neither the Supreme Court nor this court has addressed the question of whether disparate impact claims are cognizable under Title II." *Id.* at 813. Nevertheless, the court found:

> In the present case, even assuming arguendo that disparate impact claims are cognizable under Title II, the plaintiffs did not establish a prima facie case of discrimination *of the type required in disparate impact claims*. The plaintiffs failed to allege that there was a specific Conoco policy which had a negative disparate effect on minority customers. . . . The plaintiffs' complaints set forth facts regarding approximately six specific incidents of racially discriminatory treatment, but do not establish any widespread or general effect on minority consumers.

*Id.* (emphasis added).

13

profanity, and obscene gestures." *Id*. at 811.[9]

¶30. On *these* claims, the Fifth Circuit found that Arguello and Govea presented summary judgment evidence regarding the factors to establish an agency relationship between Conoco and Smith and, therefore, remanded the case for further proceedings. *Id*. at 812-13. As such, *Arguello* supports our determination that Teel indeed stated a claim for public-accommodation racial discrimination based upon the alleged racial epithet directed to her in the service context. Accordingly, we find that the circuit court's reliance on *Arguello* in this case was misplaced.

¶31. For the reasons discussed, we find that the circuit court erred in dismissing Teel's complaint on the ground that she failed to state a claim under Title II.

## II. Demand for Relief

¶32. The circuit court also dismissed Teel's complaint because Teel's sole claim for relief was for monetary damages, which are not recoverable under 42 U.S.C. § 2000a. We agree that dismissal was appropriate on this ground. "Title II authorizes only prospective injunctive and declaratory relief." *Hager*, 102 F.4th at 705 (citing 42 U.S.C. § 2000a-3;[10]

---

[9] "The district court found that as a matter of law there was no agency relationship between Smith and Conoco because Smith's acts of discrimination towards Arguello and Govea were outside the scope of Smith's employment." *Id.* at 809.

[10] Section 2000a-3 provides:

Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action *for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved*.

14

*Newman*, 390 U.S. at 402. "[T]he nature of the relief to be granted pursuant to Title II is expressly limited to preventive, injunctive remedies, which excludes recovery of damages." *Miller v. Amusement Enters. Inc*., 426 F.2d 534, 538 (5th Cir. 1970); *see Bass*, 180 F.3d at 244; 42 U.S.C. § 2000a-6(b) ("The remedies provided in this subchapter shall be the exclusive means of enforcing the rights based on this subchapter . . . .").

¶33.   In *Hager*, the Fifth Circuit recognized that "a request for a particular form of relief, or a 'demand for judgment,' is a necessary component of a complaint." *Hager*, 102 F.4th at 705 (citing Fed. R. Civ. P. 8(a)(3)).  Mississippi Rule of Civil Procedure 8(a)(2) likewise requires that a complaint "shall contain . . . a demand for judgment for the relief to which [the plaintiff] deems himself entitled." M.R.C.P. 8(a)(2).  Although a prayer for relief can be modified by seeking to amend the complaint, *Hager*, 102 F.4th at 705-06; *see* M.R.C.P. 15(a), Teel took no action to amend her requested demand for relief here.  Because Teel sought only monetary damages in her complaint and did not allege facts supporting a claim for injunctive relief, dismissal pursuant to Rule 12(b)(6) on this ground was warranted.

¶34.   This conclusion, however, does not end our analysis of this issue.  This Court has recognized that "[w]hen a trial court grants a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, and 'matters outside the pleadings are not presented,' then 'leave to amend shall be granted in accordance with Rule 15(a).'" *Archer v. Harlow's Casino Resort & Spa*, 335 So. 3d 613, 619 (¶23) (Miss. Ct. App. 2022) (quoting M.R.C.P. 12(b)).  The record reflects that the circuit court in this case limited the hearing on

---

42 U.S.C. § 2000a-3 (emphasis added).

15

Boyd Biloxi's motion to dismiss to the questions of law raised in the motion. Indeed, the circuit court repeatedly explained to Teel that the facts of the case were not at issue in that hearing. As such, no "matters outside the pleadings" were presented. Following the circuit court's order granting Boyd Biloxi's motion to dismiss, Teel could have sought leave to amend her complaint, but she did not do so.

¶35. In *Archer*, this Court recognized that "'dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend' generally constitutes error." *Id.* at (¶23) (quoting *Bartz v. Roberts*, 320 So. 3d 1255, 1264 (¶27) (Miss. Ct. App. 2021)). "If dismissal of a pro se complaint is warranted, it should be without prejudice to allow [the party] to file an amended complaint." *Id.*

¶36. Like the circumstances here, *Archer* involved a pro se plaintiff (Archer) whose complaint was dismissed pursuant to Rule 12(b)(6). *Id.* Archer, like Teel, did not seek to amend her complaint after the circuit court granted the defendant's Rule 12(b)(6) motion to dismiss. *Id.* On these facts, we held in *Archer*:

> In this case, the trial court did not specify whether it was dismissing Archer's complaint with or without prejudice. In accordance with caselaw, we must reverse this case and remand to the trial court with instructions to dismiss Archer's complaint without prejudice and to allow Archer to amend her complaint, if leave to amend is requested in accordance with Rule 15(a).

*Id.* at (¶25); *see Bartz*, 320 So. 3d at 1264-65 (¶31) (reversing the circuit court's Rule 12(b)(6) order dismissing the pro se plaintiff's complaint, with instructions to dismiss the case without prejudice to allow the pro se plaintiff the opportunity to amend his complaint pursuant to Rule 15(a)).

16

¶37. The circuit court in this case did not specify in its order whether Teel's complaint was dismissed with or without prejudice, and Teel (acting pro se) did not seek to amend her complaint after the order was entered. In accordance with *Archer* and *Bartz*, we reverse this order and remand to the circuit court with instructions to dismiss Teel's complaint without prejudice and to allow Teel to amend her complaint, if leave to amend is requested in accordance with Rule 15(a).

### III. Lack-of-Due-Process Issue on Appeal

¶38. In her appellant's brief, Teel asserts she did not receive "due process" in the circuit court based upon accusations of bias, conspiracy, and record-tampering concerning the circuit court judge, the circuit court clerk, and Boyd Biloxi's counsel. These allegations were never raised in the circuit court and are therefore procedurally barred on appeal. In any event, we have reviewed the record and find that Teel's accusations are wholly unfounded. Accordingly, we also find that Teel's lack-of-due-process argument, which is based on these accusations, is without merit.

¶39. Teel asserts the circuit court judge was "bias[ed]" and "conspired" with Boyd Biloxi's counsel to "devise[] a plan that would only result in a swift dismissal" of her case when the judge "barred vital evidence" at the motion hearing that would have proved Teel's claim against Boyd Biloxi and her entitlement to damages in this case. Teel also asserts that the judge and the circuit court clerk "tampered" with the record and purportedly "erased" "vital information" from the "final hearing [transcript]."

¶40. As an initial matter, Teel filed no motion and made no objection with respect to any

17

of these accusations in the circuit court or during record preparation. "Even a pro se litigant is held to the same procedural and evidentiary requirements as individuals represented by counsel" despite being "afforded some leniency." *White v. Home Depot*, 404 So. 3d 1216, 1232 (¶55) (Miss. Ct. App. 2024). Because Teel failed to preserve these issues by first presenting them in the circuit court, these issues are procedurally barred on appeal. *Walker v. Hasty*, 395 So. 3d 424, 436 (¶33) (Miss. Ct. App. 2024) (finding "the issue of unfair bias was never put before the court, and on appeal [appellant] is procedurally barred from raising that issue" where appellant asserted "that the trial court was biased and denied her due process" but did not seek recusal of the chancellor); *Goff v. State*, 302 So. 3d 676, 682 (¶20) (Miss. Ct. App. 2020) ("This Court and the supreme court have indicated many times that a defendant can waive an objection to the trial judge if there is no motion to recuse or motion to continue filed or if the defendant never raises the issue at any other point during the trial."). Stated succinctly, "[i]ssues not presented in the trial court may not first be argued on appeal." *Mimmitt v. Allstate Cnty. Mut. Ins. Co.*, 928 So. 2d 203, 206 (¶18) (Miss. Ct. App. 2006).

¶41. Procedural bar notwithstanding, our review of the record, including the hearing transcripts, shows that Teel's accusations against the circuit court judge, circuit court clerk, and Boyd Biloxi's counsel are entirely unsupported. We address these accusations in turn.

¶42. Teel's assertions with respect to bias and conspiracy are essentially based upon the circuit court's decision to grant Boyd Biloxi's motion to dismiss. We find no bias or conspiracy in the way the April 12 and April 19, 2024 hearings were conducted or in the

circuit court judge's ultimate decision to dismiss Teel's case pursuant to Rule 12(b)(6).

¶43. In particular, our review of the April 19 motion hearing transcript shows that when Teel informed the circuit court judge that she was going to represent herself, the judge explained to Teel that she was required to follow the same rules as attorneys and that the circuit court could not help her. Teel told the judge she understood. Later in the hearing, when Teel repeatedly tried to present evidence she believed supported her underlying discrimination claim, the judge patiently told Teel several times that the purpose of the hearing was to address the legal arguments Boyd Biloxi had presented concerning dismissal. The judge summarized these issues for Teel. After both sides presented their arguments, the judge issued a bench ruling on the motion, providing a detailed explanation for that ruling. Upon our review, we find absolutely no evidence to support Teel's accusations of bias or conspiracy.

¶44. Teel also claims the circuit court judge and Boyd Biloxi's trial counsel conspired because the judge requested Boyd Biloxi's counsel to draft a proposed order after she had issued her ruling from the bench. Teel asserts that the draft order prepared by Boyd Biloxi's counsel is evidence of collusion between the judge and defense counsel. We find no support in the record for this belief. After instructing Boyd Biloxi's counsel to prepare a proposed order, the judge explained to Teel that this order would only be a draft order, Teel did not have to agree to the ruling, and only the circuit court would issue the final written order. Teel told the judge that she understood. As such, we find that Teel's assertion that the draft order was evidence of collusion between the circuit court and defense counsel is meritless.

19

¶45. Additionally, Teel claims that the circuit court judge was biased because she did not consider filings Teel made following the April 12 original hearing on Boyd Biloxi's motion to dismiss. According to Teel, the judge never ruled at the April 12 hearing that no additional filings could be made concerning the motion to dismiss prior to the new hearing date (April 19). This assertion is simply wrong.

¶46. The April 12 hearing transcript reflects that, at Teel's request, the circuit court continued that hearing on the motion to dismiss because Teel said she thought she had COVID-19 or the flu and also to allow Teel to retain counsel. Despite the fact that Boyd Biloxi's motion had been pending since January, Teel did not raise the issue of her desire to obtain counsel until the April 12 hearing. In addition to allowing Teel time to hire counsel, the circuit court also clearly ruled that "everything stays right like it is today. Nobody's got to answer anything, nobody's got to respond to anything other than [Teel must] . . . get her lawyer and get her lawyer up to speed." We find nothing biased or conspiratorial in these circumstances on the part of the circuit court judge or Boyd Biloxi.

¶47. We also find without merit Teel's "record tampering" assertion against the circuit court judge and circuit court clerk. As noted, Teel asserts that the judge and circuit court clerk purportedly "erased" "vital information" from the "final hearing [transcript]." Teel apparently bases this accusation on her belief that as of the filing of her appellant brief (January 10, 2025), "transcripts have not been made available for review."

¶48. Teel is mistaken. The circuit court's docket for this case reflects that on October 13, 2024, the circuit court clerk sent an attorney review letter to Teel and Boyd Biloxi notifying

20

them that the record on appeal was complete and ready for review. The attorney review letter was sent nearly three months before Teel filed her appellant's brief. Further, the attorney review letter clearly explained the procedure for the attorneys to review the transcript and record. *See* M.R.A.P. 10(b)(5). Nevertheless, Teel apparently never reviewed the record or transcripts. We find that Teel has no basis whatsoever supporting her "record tampering" accusations.

¶49. For the reasons stated, we find that Teel's lack-of-due-process argument on appeal is procedurally barred and entirely without merit.

## CONCLUSION

¶50. In sum, we find that Teel asserted a prima facie case of racial discrimination under Title II. We therefore find that the circuit court erred when it dismissed Teel's complaint for not alleging a disparate impact claim under Title II. Title II, however, "authorizes only prospective injunctive and declaratory relief." *Hager*, 102 F.4th at 705. Because Teel's sole claim for relief was for monetary damages, we find that the circuit court did not err in granting Boyd Biloxi's Rule 12(b)(6) motion to dismiss on this ground. Nevertheless, we reverse the circuit court's order of dismissal with instructions to dismiss Teel's complaint without prejudice to allow Teel to amend her complaint if Teel properly requests leave to amend in accordance with Rule 15(a).

¶51. Additionally, because Teel failed to raise her allegations concerning bias, conspiracy, and record-tampering in the circuit court, her lack-of-due-process issue based on these accusations is procedurally barred. We also find that these accusations are baseless.

21

Accordingly, we also find that Teel's lack-of-due-process issue on appeal is without merit.

¶52. **REVERSED AND REMANDED.**

**BARNES, C.J., WESTBROOKS, McDONALD, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. LAWRENCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J., AND EMFINGER, J.**

**LAWRENCE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶53. I agree with the majority except for two particular points addressed in its opinion. First, the majority finds that "Teel asserted a prima facie case of racial discrimination under Title II." *Ante* at (¶50). I do not agree. Monica Teel filed her complaint against Boyd Biloxi due to "[a] violation of the Civil Rights Act of 1964 [–] Prohibition of Discrimination Based on Race, Color, Religion, Sex and National Origin" after a bartender "loudly and rudely" called her a racial slur.[11] The complaint concluded with a request for relief in the form of compensatory and punitive damages. It was later determined that Teel's claim particularly fell under Title II of the Civil Rights Act, 42 U.S.C. § 2000a-3, for which plaintiffs cannot obtain compensatory and punitive damages. "The nature of the relief to be granted pursuant to Title II is expressly limited to preventive, injunctive remedies, which excludes recovery of damages." *Ante* at (¶32) (quoting *Miller v. Amusement Enters. Inc.*, 426 F.2d 534, 538 (5th Cir. 1970)).

¶54. Boyd Biloxi made no attempt to argue that it is not subject to the provisions of Title

---

[11] This was the extent of Teel's reference to law in her complaint. In Boyd Biloxi's motion to dismiss, it "presumed that Plaintiff is alleging a violation of Title II." Teel specified in her subsequent response objecting to dismissal that her lawsuit "[i]nvolves a claim of Title II of the Civil Rights Act of 1964[.]"

II. Rather, it argued that Teel failed to make a prima facie case of racial discrimination **against the business** under the law by which she chose to bring her claims. Teel's complaint clearly articulated the offending behavior for which she sought legal redress:

> An employee (bartender) of IP Casino Resort Spa created a racially motivated and hostile environment. The said bartender loudly and rudely called the Plaintiff a "black n***** b****" because the Plaintiff questioned the price of the cocktail being served. Mrs. Teel was not rude or condescending, she was only questioning the cost. The insulting and repulsive response created a terrifying and hostile environment. The Plaintiff became distraught as it seemed she was in extreme danger. The bartender's temper escalated causing the Plaintiff to fear for her safety; she felt it was in her best interest to leave the IP Casino Resort Spa as quickly as possible. After the verbal harassment attack, Mrs. Teel was waiting on food she had ordered just prior to the outburst by the IP Casino bartender. Four (or more maybe) members of IP Casino management approached the Plaintiff to ask if she was okay. Mrs. Teel responded she couldn't talk at that moment as she was so distressed. Mrs. Teel then got her food order and headed towards the exit. The Plaintiff left and went to her car - away from the threatening tone of the bartender, the casino and the oppressive environment. Mrs. Teel's granddaughter had to drive the Plaintiff home that evening.

¶55. As the majority correctly notes, in order to prove a prima facie case of discrimination under Title II, Teel needed to show that she satisfied the following elements: "(1) she is a member of a protected class; (2) she attempted to contract for the services of a public accommodation; (3) she was denied those services; and (4) the services were made available to similarly situated persons outside her protected class." *Ante* at (¶23) (quoting *Hager*, 102 F.4th at 700). Teel's complaint alleged one person acted in a discriminatory manner toward her. She was never denied entry or seating based on her race. She was never denied food, drink, or service based on her race. A dispute occurred because she was required to pay the same price as everyone else for a particular alcoholic beverage. The dispute continued until

23

the bartender made a horrible, unprofessional, and totally unacceptable comment to Teel. That comment was made without permission or authority from Boyd Biloxi and, importantly, without any proof of any policy directing or permitting the employee to act as he did. One person acting in such a reprehensible manner can hardly be sufficient to prove racial discrimination by a business based on the required legal elements the majority clearly acknowledges. If she was denied a service, it was because she refused to pay the same price for an alcoholic beverage everyone else was charged. That is simply not sufficient proof to invoke a civil rights legal claim.

¶56. As further proof of discrimination, Teel alleged that after the episode, approximately four managers approached her to check on her. This, too, is not proof of discrimination but, rather, proof that Boyd Biloxi's management cares about their customers. In the end, she was unable to bring forth any other instances of discrimination. Although she was able to offer a screenshot[12] of one of Boyd Biloxi's policies, that policy explicitly stated that the business "do[es] not tolerate discrimination of any kind[.]"

¶57. While Teel has shown that the bartender hurled a disparaging slur toward her, she has not shown that Boyd Biloxi was complicit in that bartender's behavior in any form. To be clear, I fully agree that the IP Resort bartender's utilization of "the most noxious racial epithet in the contemporary American lexicon[,]" *see ante* at (¶26) (quoting *Fennell*, 804 F.3d at 409), was completely inappropriate. Such an incident certainly could have been the legal basis for various causes of action Teel could have filed against the bartender,

_____

[12] The screenshot was not authenticated, but the trial judge nonetheless considered it.

24

**individually**. But that is not how Teel elected to seek redress. Instead, she sought relief under Title II, implicating Boyd Biloxi (as a business) as a discriminatory environment. Teel was unable to show any proof of Boyd Biloxi's discriminatory practices; therefore, there were no genuine issues of material fact, and Boyd Biloxi was entitled to judgment as a matter of law. I would affirm the trial court's grant of summary judgment.

¶58. Second, I disagree that pro se litigants should have less strict or complimentary interpretations of the Rules of Civil Procedure than any other litigant. This Court should not represent Teel's interest by advising her that she may seek amendments. The rules should apply to her like anyone else who has an attorney. Courts often caution pro se litigants that no special consideration will be given and that they are expected to know the rules and the procedures of courts as if they had an attorney. *See Bailey v. Wheatley Ests. Corp.*, 829 So. 2d 1278, 1281 (¶11) (Miss. Ct. App. 2002) ("This Court will not give deference to a person who chooses to represent h[er]self."). In fact, that is exactly what the trial judge continuously told Teel after giving her the time she requested to hire an attorney. Nevertheless, Teel returned to court without an attorney and advised the trial court that she still wanted to represent herself. This Court has consistently refused to represent litigants or offer advisory opinions.[13] But here, it seems that is exactly what we are doing. Therefore,

---

[13] *See RDJJ Servs. Inc. v. Rivera*, 322 So. 3d 500, 513 (¶47) (Miss. Ct. App. 2021) ("The purpose of our appellate review is not to settle questions in the abstract or to issue advisory opinions." (quoting *Oak Creek Invs. LLC v. Atlas FRM LLC*, 307 So. 3d 503, 508 n.4 (Miss. Ct. App. 2020))); *Gamma Healthcare Inc. v. Est. of Grantham*, 356 So. 3d 135, 140 (¶15) (Miss. Ct. App. 2020) (recognizing this Court "ha[s] no power to issue advisory opinions" (quoting *Fails v. Jefferson Davis Cnty. Pub. Sch. Bd.*, 95 So. 3d 1223, 1225 (¶10) (Miss. 2012))); *Tunica Cnty. Democratic Exec. Comm. v. Jones*, 233 So. 3d 792, 797 (¶14) (Miss. 2017) (stating the supreme court "does not issue advisory opinions" (citing *Hughes*

I respectfully dissent in part.

**WILSON, P.J., AND EMFINGER, J., JOIN THIS OPINION.**

---

*v. Hosemann*, 68 So. 3d 1260, 1263 (Miss. 2011))); *Loden v. State*, 222 So. 3d 312, 313 n.1 (Miss. 2017) (noting "[t]he purpose of judicial opinions and orders is to vet opposing views, determine which viewpoint best comports with the rule of law, and rule accordingly" (quoting *Hughes*, 68 So. 3d 1260, 1263 (Miss. 2011) (citing *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 93 (Miss. 2010)).